**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
Greenbelt Division

| | | |
|---|---|---|
| ANDREA REED,<br>16877 Sea Lawn Place<br>Woodbridge, VA 22191 | )<br>)<br>)<br>) | Civil Action No. |
| Plaintiff | )<br>)<br>) | |
| v. | )<br>) | JURY TRIAL DEMANDED |
| INNOVATIVE MANAGEMENT<br>STRATEGISTS, LLC,<br>4500 Pond Way, Suite 240<br>Woodbridge, VA 22192 | )<br>)<br>)<br>)<br>) | |
| and | )<br>) | |
| MANAGEMENT SOLUTIONS<br>CONSULTING GROUP, INC.,<br>5108 Janesdale Court<br>Glenn Dale, MD 20769 | )<br>)<br>)<br>)<br>) | |
| Defendants. | )<br>) | |

## COMPLAINT

Plaintiff Andrea Reed, by her undersigned counsel, hereby complains of Defendant Innovative Management Strategists, LLC ("IMS"), and Defendant Management Solutions Consulting Group, Inc. ("MSCG") (collectively, "Defendants"), as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this action to recover damages for Defendants' unlawful acts of discrimination on the basis of Plaintiff's gender and pregnancy and retaliation for her engagement in protected activity, as prohibited by Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq. ("Title VII"), to include the Pregnancy Discrimination Act of 1978,

42 U.S.C. § 2000e(k) ("PDA").

## JURISDICTION AND VENUE

2.   This Court maintains jurisdiction over this action pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. § 1331.

3.   This action properly lies in the United States District Court for the District of Maryland pursuant to 42 U.S.C. § 2000e-5(f)(3).

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

4.   Plaintiff exhausted her administrative remedies by timely filing a charge of discrimination with the U.S. Equal Employment Opportunity Commission (hereinafter, "EEOC"), and filing this action within 90 days of receipt of the Dismissal and Notice of Rights, issued by the EEOC on March 31, 2016.

## PARTIES

5.   At all times relevant herein, Plaintiff lived in the Commonwealth of Virginia.

6.   At all times relevant herein, Plaintiff was an "employee" within the meaning of 42 U.S.C. § 2000e(f), and was jointly and concurrently employed by both Defendants, as IMS is a shell company of MSCG.  Defendants shared staff, payroll, and office space in Maryland.

7.   Upon information and belief, IMS is a limited liability company registered in the Commonwealth of Virginia.

8.   On information and belief, MSCG is a corporation registered in the State of Maryland. According to Maryland Department of Assessment and Taxation Business Services records, MSCG's principal office is located at 5108 Janesdale Court, Glenn Dale, MD 20769.[1]

---

[1]   On its website, MSCG lists its mailing address as 4601 Presidents Drive, Suite 200, Lanham, MD 20706.  *See* Management Solutions Consulting Group, Inc., "Contact Us," http://www.mscginc.com/contactus.htm.

9.  Upon information and belief, at all times relevant herein, Defendants have been "employer[s]" within the meaning of 42 U.S.C. § 2000e(b).

10. Upon information and belief, at all times relevant herein Defendants employed more than fifteen (15) employees.

## FACTS

### *Background*

11. Plaintiff is female.

12. On January 2, 2013, MSCG hired Plaintiff.

13. Plaintiff's title at MSCG was Logistics Coordinator, and she worked at MSCG's office at 4601 Presidents Drive, Suite 200, Lanham, Maryland.

14. Plaintiff's primary job duties included coordinating travel and logistics for consultants to conduct site visits of community healthcare centers for the Bureau of Primary Health Care.

15. Plaintiff's first-line supervisor was MSCG Logistics Manager Ramonda Davis.

16. Throughout her employment, Plaintiff received excellent performance evaluation ratings and was consistently recognized as a valuable employee.

17. Defendants recognized Plaintiff's outstanding work with several pay raises and bonuses.

### *Defendants enter into joint partnership venture.*

18. In July 2014, MSCG was awarded two new contracts with the HIV/AIDS Bureau ("HAB") of the Health Resources and Services Administration as a joint partnership venture with IMS.

19. On October 20, 2014, MSCG President Kelly Burks called Plaintiff on the phone to ask if she would like to transfer to IMS.

20. Ms. Burks explained to Plaintiff that the transfer to IMS would be a good move because she was the sole logistics coordinator on the HAB contracts.

21. Ms. Burks also informed Plaintiff that IMS was opening an office space in Woodbridge, Virginia, which would allow Plaintiff to work much closer to home.

22. Ms. Burks advised Plaintiff that her job duties would remain the same and Plaintiff would receive comparable benefits at IMS.

23. According to Ms. Burks, Plaintiff's transfer to IMS would be a "paperwork change," rather than a "day-to-day operational change."

24. MSCG Operations Director Sheri Hughes also referred to Plaintiff's transfer to IMS as "more of a paper move."

25. Indeed, after the transfer to IMS, Plaintiff retained her Logistics Coordinator title and duties and continued to report to Ms. Davis, who remained an MSCG employee.

<em><u>Loss of benefits.</u></em>

26. Shortly after completing the IMS on-boarding paperwork on October 24, 2014, Plaintiff learned that, as a result of transferring to IMS, she would lose more than 30 hours of paid leave she accrued during her time at MSCG, as well as short-term and long-term disability benefits and life insurance benefits.

27. On October 31, 2014, Human Resources Consultant Joanna Vasconi emailed Plaintiff that the life insurance, short term disability, and long term disability benefits were "forthcoming" for IMS employees and that information would be provided "as soon as possible."

28. On November 1, 2014, Plaintiff emailed Ms. Burks and IMS President Latonya Dunlow and requested to postpone her transfer to IMS and she also requested a meeting with them.

29. Plaintiff's email explained that she was concerned about how her prospective transfer to IMS could result in losing her benefits.

30. On November 2, 2014, Ms. Dunlow responded to Plaintiff's email and instructed Plaintiff to

meet her at 8:30 a.m. the following morning, November 3, 2014, at a Panera Bread restaurant in Woodbridge, Virginia (hereinafter "Panera").

31. Plaintiff asked if they could meet on November 5, 2014, instead, but Ms. Dunlow insisted on meeting the following morning at 8:30 a.m.

*November 3, 2014 - Plaintiff discloses her intention to become pregnant.*

32. At the time Plaintiff was hired, she did not have any children.

33. In late 2014, Plaintiff and her husband wanted to start a family and she intended to become pregnant.

34. After Plaintiff learned of the benefits she would lose with a transfer to IMS, she was concerned that she would be ineligible for maternity leave at IMS.

35. On November 3, 2014, Plaintiff met with Ms. Dunlow at Panera.

36. During the meeting, Plaintiff reiterated her concerns to Ms. Dunlow about losing her benefits due to the transfer to IMS and her concerns about the lack of information regarding the purported "forthcoming" benefits.

37. More specifically, Plaintiff explained to Ms. Dunlow the significance of retaining all of her benefits was due to her intentions to start a family and Plaintiff disclosed that she might already be pregnant.

38. Ms. Dunlow became visibly concerned and asked Plaintiff, "Well, are you pregnant now?  If you're not pregnant now, then there is no real rush or worry to have the benefits right now."

39. On information and belief, Ms. Dunlow does not have children.

*Defendants discriminatory denial of Plaintiff's request to postpone her transfer to IMS.*

40. Before the meeting ended, Plaintiff again requested to postpone her transfer until the following year because she needed to retain her benefits during pregnancy and childbirth.

41. Ms. Dunlow denied Plaintiff's request without any justification.

*Defendants discriminatory denial of Plaintiff's requests to telework.*

42. Several other employees were transferred from MSCG to IMS around the same time as Plaintiff.

43. On information and belief, at least two of these employees, including the Project Manager and Reports Specialist who also worked on HAB contracts, were permitted to telework full-time.

44. On information and belief, neither of those two employees were pregnant or had discussed family planning issues with Ms. Dunlow.

45. On November 5, 2014, Plaintiff emailed Ms. Dunlow to ask if she could telework until IMS opened its office space in Woodbridge, because her daily round-trip commute was between three and four hours.

46. All of Plaintiff's work duties could be performed remotely, and there was no need for her physical presence unless there was a staff meeting.  Plaintiff had remote access to work documents and resources, and she was able to perform all of her job duties remotely.

47. In response, Ms. Dunlow instructed Plaintiff to meet her at Panera on November 7, 2014.

48. Ms. Dunlow treated Plaintiff in a hostile and condescending manner during the meeting on November 7, 2014 and Ms. Dunlow told Plaintiff she was not permitted to telework.

49. When Plaintiff said she believed that teleworking would increase her productivity because she could spend more time working and less time commuting, Ms. Dunlow insultingly asked Plaintiff if she was having problems getting her work done.

50. Shortly after that meeting, Ms. Dunlow hired a new Office Manager and allowed her to telework full-time due to the lack of office space in Woodbridge.

51. During the week of November 10, 2014, Plaintiff emailed Ms. Burks and Ms. Dunlow and requested to telework on November 28, 2014; December 11–12, 15, and 26, 2014; and January

2, 2015.

52. Ms. Dunlow approved Plaintiff's requests to telework on November 28, 2014; December 26, 2014; and January 2, 2015, and denied her request for the other dates.

53. Plaintiff asked for reconsideration, but Ms. Dunlow never responded.  Instead, Ms. Dunlow directed Ms. Vasconi to inform Plaintiff that "telecommuting is not an option for IMS employees."

*Plaintiff complained about discrimination.*

54. Following this email exchange, Plaintiff met with Ms. Burks and reported Ms. Dunlow's hostility towards Plaintiff.

55. Plaintiff explained that Ms. Dunlow had been unsupportive and critical of her after she had disclosed her intention to become pregnant and that Ms. Dunlow had questioned Plaintiff's work ethic and abilities.

56. Ms. Burks agreed to speak to Ms. Dunlow about Plaintiff's concerns and encouraged Plaintiff to do so as well.

*Plaintiff's pregnancy.*

57. On December 9, 2014, Plaintiff took a home pregnancy test, which indicated that she was pregnant.

58. Plaintiff scheduled medical appointments related to her pregnancy and later that day, Plaintiff contacted Ms. Dunlow and requested to telework December 29, 2014 (the date of Plaintiff's medical appointment to confirm her pregnancy).

59. Ms. Dunlow begrudgingly approved Plaintiff's request to telework on December 29, 2014, as "an exception to the rule."

60. On December 15, 2014, Plaintiff began experiencing fatigue, nausea, and vomiting related to her pregnancy.

61. By December 23, 2014, Plaintiff's symptoms related to her pregnancy became too severe to stay at work.

62. Linda Martin, Plaintiff's onsite supervisor that day, and several of her colleagues observed Plaintiff's medical condition and remarked to Plaintiff that she looked unwell.

63. Both Ms. Martin and Office Manager Shirley Martin Thomas told Plaintiff she could leave work early so Plaintiff left work at approximately 1:40 p.m.

64. When she arrived home, Plaintiff logged on to Defendants' remote system to complete her work and she emailed Ms. Dunlow to inform her that she left work early due to illness and requested to work from home the next day, December 24, 2014.

65. Ms. Dunlow immediately responded to Plaintiff's email and denied her request to telework the following day.

66. Plaintiff responded to Ms. Dunlow's email and explained that she felt she was being treated unfairly and was being subjected to more scrutiny than her coworkers.

67. Plaintiff asked Ms. Dunlow for the reasons her request to telework due to illness was denied when other IMS employees were allowed to telework on a regular basis.  Ms. Dunlow never responded.

68. Plaintiff complied and she reported to work on December 24, 2014.

*Defendants fired Plaintiff.*

69. At approximately 8:00 a.m. on December 29, 2014, the day of Plaintiff's doctor's appointments to confirm her pregnancy, Plaintiff received an email from Ms. Dunlow, telling her to come to Panera at 9:30 a.m.

70. Plaintiff met with both Ms. Dunlow and Ms. Vasconi at Panera, and was told that her employment was being terminated.  When Plaintiff asked why, Ms. Dunlow simply stated that, "it was a decision that was made."   Ms. Vasconi stated that the decision was "final."

71. Although no explanation was provided to Plaintiff, on January 12, 2015, Ms. Vasconi told the Maryland Department of Labor, Licensing and Regulation, Office of Unemployment Insurance that Plaintiff "was fired for leaving the office without her Supervisor's authorization."

72. Ms. Vasconi also reported that, "She had no prior warnings for doings [sic] this.  Our policy states that she is to notify her Supervisor with Innovative Management or the Client Supervisor."

73. This was false and Plaintiff had notified her Client Supervisor, Linda Martin, who encouraged Plaintiff to leave work early on December 23rd.

74. Ms. Vasconi reported that, even though both parties were present at work on December 24th, Plaintiff was not fired on that day because Ms. Dunlow was "too busy to fire her on 12/24/2014 because [she] was in a meeting."  Instead, Ms. Dunlow and Ms. Vasconi waited until December 29th and fired Plaintiff in a restaurant.

75. Defendants' stated reasons for terminating Plaintiff's employment were not credible and merely pretext to mask unlawful discrimination based on Plaintiff's intention to become pregnant.

## COUNT 1

### (Title VII – Pregnancy Discrimination)

76. Plaintiff repeats and realleges paragraphs 1–75 as if fully set forth herein.

77. Defendants discriminated against Plaintiff on the basis of her gender and pregnancy when they denied her requests to postpone her transfer, denied her requests to telework, and terminated her employment.

78. By and through its conduct, Defendant violated Title VII.

79. Defendant acted intentionally and with conscious disregard of Plaintiff's rights.

80. As a result, Plaintiff has sustained damages including lost wages and benefits, mental anguish, emotional distress, pain and suffering, and punitive damages.

## COUNT 2

### Title VII — Reprisal for Engaging in Protected Activity

81. Plaintiff repeats and realleges paragraphs 1–80, as if fully set forth herein.

82. Defendants retaliated against Plaintiff for engaging in protected activity, when they denied her requests to telework and terminated her employment.

83. By and through its conduct, Defendant violated Title VII.

84. Defendant acted intentionally and with conscious disregard of Plaintiff's rights.

85. As a result, Plaintiff has sustained damages including lost wages and benefits, mental anguish, emotional distress, pain and suffering, and punitive damages.

## DEMAND FOR JURY TRIAL

86. Plaintiff hereby demands a trial by jury.

**WHEREFORE**, Plaintiff requests that the Court enter judgment against Defendants on all Counts and award Plaintiff lost wages, front pay, and benefits; $300,000 in compensatory damages for pain and suffering, mental anguish, and emotional distress on each Count; punitive damages; interest; costs; the amount of tax on any award; reasonable attorneys' fees; and any such other relief as the Court deems fair and just.

10

Dated:  June 29, 2016                          RESPECTFULLY SUBMITTED,

                                               Alan Lescht & Associates, P.C.

                                               _/s/_____

                                               Alan Lescht [#12928]
                                               Susan Kruger [#15313]
                                               Rani Rolston [#17402]
                                               1050 17th Street, N.W., Suite 400
                                               Washington, D.C. 20036
                                               Tel:  (202) 463-6036
                                               Fax:  (202) 463-6067
                                               Alan.lescht@leschtlaw.com
                                               Susan.kruger@leschtlaw.com
                                               rani.rolston@leschtlaw.com
                                               *Attorneys for Plaintiff*