IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

ANDREA REED                        :

                                   :

    v.                             :   Civil Action No. DKC 16-2442

INNOVATIVE MANAGEMENT              :
STRATEGISTS,INC. and MANAGEMENT
SOLUTIONS CONSULTING GROUP, INC.:

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this
employment case are: (1) a motion to transfer filed by Defendant
Innovative Management Strategists, Inc. ("IMS") (ECF No. 19);
(2) a motion to dismiss or for summary judgment filed by IMS
(ECF No. 20); and a motion to dismiss filed by Defendant
Management Solutions Consulting Group, Inc. ("MSCG") (ECF No.
32).[1]  The issues have been briefed, and the court now rules, no
hearing being deemed necessary.  Local Rule 105.6.  For the
following reasons, the motions to dismiss or for summary
judgment will be granted for both Defendants, and IMS's motion
to transfer will be dismissed as moot.

---

[1] MSCG styled its motion as a motion to dismiss, but it
requests in a footnote that that the motion alternatively be
treated as one for summary judgment if necessary to consider the
attached documents.  (ECF No. 32-2, at 4).  As discussed below,
the motion will be converted to one for summary judgment with
regard to Plaintiff's claims under the Prince George's County
Human Rights Ordinance.

I.  **Background**[2]

Plaintiff Andrea Reed, a Virginia resident, began working as a Logistics Coordinator for MSCG in in January 2013.  (ECF No. 14 ¶¶ 13-14).  MSCG is a Maryland corporation whose principal office is in Glenn Dale, Maryland. (*Id.* ¶ 10). Plaintiff worked at MSCG's office in Lanham, Maryland, which is in Prince George's County.  (*Id.* ¶ 15).

In October 2014, MSCG President Kelly Burks talked to Plaintiff about moving to a new role as a Logistics Coordinator for IMS.  (*Id.* ¶ 20).  MSCG and IMS had developed a joint venture, and IMS would be opening an office in Woodbridge, Virginia, which was much closer to Plaintiff's Virginia home. (*Id.* ¶¶ 19-20).  Plaintiff agreed to the transfer and, according to her employment letter, was scheduled to start with IMS on Monday, November 3, 2014.  (ECF No. 32-3, at 2).

On Friday, October 31, Plaintiff received an email from IMS's Human Resources Consultant Joanna Vasconi stating that information on IMS's employee benefits package would be forthcoming.  (ECF No. 14 ¶ 27).  Plaintiff and her husband wanted to start a family in the near future, and she became concerned that the transfer to IMS would cause her to lose more than 30 hours of paid leave that she had accrued with MSCG, as

---

[2] Unless otherwise noted, the facts outlined in this section are set forth in the complaint or undisputed and construed in the light most favorable to Plaintiff.

well as maternity leave, disability benefits, and life insurance benefits. (*Id.* ¶¶ 25, 26). Plaintiff emailed Ms. Burks and IMS President Latonya Dunlow the next day asking to delay her move to IMS because of her concerns and requesting a meeting to discuss her benefits. (*Id.* ¶ 28). Ms. Dunlow set the meeting for 8:30 a.m. Monday morning, Plaintiff's first day with IMS, at a Panera Bread restaurant in Woodbridge, a location where she frequently held meetings because IMS was not yet able to move into its Woodbridge office space. (*Id.* ¶¶ 29-30). At the meeting, Plaintiff expressed concerns about losing her MSCG benefits and what options she would have if she became pregnant. According to the complaint, Ms. Dunlow "became visibly concerned" and stated, "Well, are you pregnant now? If you're not pregnant now, then there is no real rush or worry to have the benefits right now." (*Id.* ¶ 32). Ms. Dunlow denied Plaintiff's request to postpone her start date. (*Id.* ¶ 33).

Plaintiff began work for IMS that day, but continued to work in MSCG's Lanham office. She alleges that she continued to report to the same direct supervisor, MSCG's Logistics Manager Ramona Davis. (*Id.* ¶ 23). On November 5, Plaintiff asked Ms. Dunlow if she could telework until the Woodbridge office opened because all of her duties could be fulfilled remotely and her roundtrip commute to Lanham was between three and four hours per day. (*Id.* ¶ 35). Although Ms. Dunlow had allowed other

employees to telework until the Woodbridge office opened, she denied Plaintiff's request. (*Id.* ¶¶ 34, 37, 38). The following week, Plaintiff submitted requests to telework on specific days during November and December to accommodate her holiday plans. (*Id.* ¶ 39). Ms. Dunlow approved some of these dates but denied others. (*Id.* ¶ 40). Plaintiff asked for reconsideration with regard to the other days she had requested because she wanted to travel out of town, but Ms. Vasconi responded that IMS did not have a telecommuting policy and that it was "a benefit based on the needs of the job, work group, and company at the time of the request." (ECF No. 32-6, at 2).[3]

On December 9, Plaintiff took an at-home pregnancy test which indicated that she was pregnant. (*Id.* ¶ 43). She began to suffer from fatigue, nausea, and vomiting due to her pregnancy and, on December 23, left work early because she was feeling unwell. (*Id.* ¶¶ 45-46). Linda Martin, her onsite supervisor that day, approved her request to leave early. (*Id.* ¶ 46). Plaintiff then emailed Ms. Dunlow to inform her that she had left early and to request permission to work from home the following day; Ms. Dunlow again denied her request. (*Id.* ¶¶ 47-48). Plaintiff responded to Ms. Dunlow, stating that she felt

---

[3] The content of the emails denying Plaintiff's telework requests are integral to the complaint and therefore may be considered on Defendants' motions to dismiss. *Philips v. Pitt Cnty. Memorial Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

she was being treated unfairly with regard to teleworking. (*Id.* ¶ 49).

On December 29, Ms. Dunlow requested a meeting with Plaintiff later that day in Woodbridge and fired Plaintiff at that meeting. (*Id.* ¶¶ 51-52). IMS has stated that Plaintiff had been fired for leaving the office early without supervisor permission on December 23. (*Id.* ¶ 53). Plaintiff maintains that Ms. Martin was her supervisor under the terms of the IMS employee handbook and had approved her early departure. (*Id.* ¶ 40).

Plaintiff timely filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"), which issued a Dismissal and Notice of Rights on March 31, 2016. (*Id.* ¶ 6). She filed the instant suit on June 29, alleging claims under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, for (1) discrimination on the bases of her sex and pregnancy and (2) retaliation for engaging in protected activity. (ECF No. 1). After Plaintiff filed an amended complaint to add counts under the Prince George's County Human Rights Ordinance for (1) discrimination based on her sex, (2) discrimination based on her familial status, and (3) retaliation (ECF No. 14), IMS filed the pending amended motions

to transfer[4] and to dismiss on September 15, and Plaintiff responded on October 3. (ECF Nos. 19; 20; 28; 29). MSCG filed its pending motion to dismiss on October 17; Plaintiff responded and MSCG replied. (ECF Nos. 32; 33; 34).

## II.  Title VII Claims

### A.  Standard of Review

IMS and MSCG (together, "Defendants") both have filed motions to dismiss under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The purpose of a motion to dismiss under Rule 12(b)(6) is to test the sufficiency of the complaint. *See Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006). A plaintiff's complaint need only satisfy the standard of Rule 8(a), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). At this stage, all well-pleaded allegations in a complaint must be considered as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and all factual allegations must be construed in the light most favorable to the plaintiff, *see Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d

---

[4] The motion to transfer cites to 28 U.S.C. § 1404(a), a discretionary venue transfer provision. The issues raised are not jurisdictional and need not be considered prior to addressing the motions to dismiss. The transfer motion will be denied as moot.

1130, 1134 (4th Cir. 1993)).   In evaluating the complaint, however, unsupported legal allegations need not be accepted. *See Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989).  "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n.3 (2007).  That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

**B.   Failure to State a Claim for Discrimination**

Defendants contend that Plaintiff has failed to state a proper claim for discrimination under Title VII.  Ultimately, to succeed on a Title VII claim, a plaintiff must provide direct evidence of unlawful discrimination or, if direct evidence is lacking, follow the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  The elements of a *prima facie* case of discrimination under Title VII are: (1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different

7

treatment from similarly situated employees outside the protected class. *Coleman v. Md. Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010), *aff'd sub nom. Coleman v. Court of Appeals of Md.*, 132 S.Ct. 1327 (2012). At the motion to dismiss stage, however, a complaint need not establish a *prima facie* case of discrimination under the *McDonnell Douglas* framework. *See Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506, 510 (2002) (noting that "[t]he *prima facie* case . . . is an evidentiary standard, not a pleading requirement"). Rather, "to survive a motion to dismiss, the complaint must 'state a plausible claim for relief' that 'permits the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman*, 626 F.3d at 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). A plaintiff must allege a situation that is more than consistent with discrimination; it must "alone support a reasonable inference that the decisionmakers were motivated by [impermissible] bias." *McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (citing *Iqbal*, 556 U.S. at 678). Indeed, in *McCleary-Evans*, the United States Court of Appeals for the Fourth Circuit upheld the district court's dismissal of an employment discrimination complaint because it left "open to speculation the cause for the defendant's decision," and discrimination was

not plausible in light of another "obvious alternative explanation." *Id.*

Defendants argue that the complaint must be dismissed because Plaintiff has not alleged that a non-pregnant employee was not fired under similar circumstances or was hired to replace her. (ECF No. 32-2, at 19). According to MSCG, unless Plaintiff alleges a comparator, none of her allegations "remotely suggest that the termination was prompted by her expression of intent to become pregnant." (*Id.*). The complaint provides only one interaction or discussion of pregnancy or family planning that Plaintiff alleges should support the necessary inference: When Plaintiff brought up trying to get pregnant at the November 3 meeting, Ms. Dunlow "became visibly concerned" and said, "Well, are you pregnant now? If you're not pregnant now, then there is no real rush or worry to have the benefits right now." (ECF No. 14 ¶ 32). This statement does not suggest that IMS began denying Plaintiff's telework requests and ultimately fired her because she was planning to get pregnant. Nothing in these allegations offers a sensible rationale for why Plaintiff's attempts to get pregnant would justify denying her telework requests just a few days later. The explanation IMS gave to the state that she was fired for leaving without permission may be disputed given that Plaintiff purports to have received permission to leave from Ms. Martin,

but Plaintiff's repeated requests for telework after being told that she needed to work from Lanham raise an obvious alternative explanation: that her termination was the result of her repeated attempts to avoid going to the office and Ms. Dunlow's questions about "Plaintiff's work ethic and abilities." (*Id.* ¶ 42). In short, Plaintiff's assertions that Defendants' decisions and conduct were motivated by her attempts at pregnancy "are simply too conclusory. Only speculation can fill the gaps in [her] complaint." *McCleary-Evans*, 780 F.3d at 586. Plaintiff pleads facts potentially showing that she was treated differently than other employees, but, much like in *McCleary-Evans*, the complaint fails plausibly to allege that any difference was the result of prohibited discrimination as opposed to differences in job duties, personal conflict between her and Ms. Dunlow, or other non-prohibited reasons.

### C.   Failure to State a Claim for Retaliation

Defendants also contend that Plaintiff fails to state a proper claim for retaliation for engaging in protected activity. (ECF No. 32-2, at 19-23). Plaintiff contends that (1) a conversation she had with Ms. Burks about Ms. Dunlow treating her unfairly and (2) her email to Ms. Dunlow about being treated unfairly constitute protected activities because "protected activity includes 'utilizing informal grievance procedures as well as . . . voicing one's opinions in order to bring attention

to an employer's discriminatory activities.'" (ECF No. 33, at 14 (quoting *Kubicko v. Ogden Logistics Servs.*, 181 F.3d 544, 551 (4th Cir. 1999)). Plaintiff does not allege that she mentioned her pregnancy, sex, or any other type of discrimination in either of these conversations. Indeed, in her conversation with Ms. Burks, she raised only non-protected issues, such as Ms. Dunlow being critical of Plaintiff's work ethic and abilities. (ECF No. 14 ¶ 42). In her email to Ms. Dunlow, Plaintiff complains of being treated unfairly, but not due to her pregnancy or sex. (*Id.* at 49; ECF No. 32-8, at 2). Because Plaintiff has not properly alleged that she engaged in any protected activity, her retaliation claims will be dismissed.

## III. Prince George's County Claims

With the dismissal of Plaintiff's federal claims, only state law claims within the court's supplemental jurisdiction remain. Under these circumstances, "when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Because these claims can easily be resolved, the court will retain jurisdiction at this juncture.

Defendants argue that Plaintiff's claims under the Prince George's County Human Rights Ordinance (the "Ordinance") must

fail because she has not exhausted her administrative remedies. Maryland law provides that a person may bring a civil action against an employer for violating the Ordinance so long as the action is commenced no sooner than 45 days after the plaintiff filed a complaint with the county authority.  Md. Code Ann., State Gov't, § 20-1202(b), (c)(2)(i).   In Prince George's County, that filing authority is the Executive Director of the Prince George's County Human Relations Commission (the "PGHRC"). Prince George's Cty. Code, 12 Human Relations, § 2-201. Plaintiff's complaint alleges only that she filed her discrimination charges with the EEOC, not with the PGHRC. (ECF No. 14 ¶ 6).

### A.   Standard of Review

As noted above, on a motion to dismiss under Rule 12(b)(6), a court only considers allegations in the complaint and necessary documents attached or integral to that complaint. Affirmative defenses are rarely capable of resolution on a motion to dismiss.  Here, whether Plaintiff filed with the PGHRC is not evident from the face of her complaint.  As a result, the court will consider matters outside of the pleadings in its analysis.  "Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion to dismiss."  *See Bosiger v. U.S. Airways*, 510 F.3d 442, 450 (4th Cir. 2007).  When the court considers matters

outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.*, 109 F.3d 993, 997 (4th Cir. 1997). The term "reasonable opportunity" entails two basic requirements. First, the opposing party must have some indication that the court is treating the motion as one for summary judgment. *See Gay v. Wall*, 761 F.2d 175, 177 (4th Cir. 1985). A party's awareness that material outside the pleadings is pending before the court satisfies this notice requirement. *See id.; Warner v. Quilo*, No. ELH-12-248, 2012 WL 3065358, at *2 (D.Md. July 26, 2012) ("When the movant expressly captions its motion 'in the alternative' as one for summary judgment, and submits matters outside the pleadings for the court's consideration, the parties are deemed to be on notice that conversion under Rule 12(d) may occur[.]" (quoting *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 261 (4th Cir. 1998))). Second, courts must satisfy themselves that the nonmoving party has had a fair opportunity to discover information essential to oppose the motion. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 n. 5 (1986) (citing Fed.R.Civ.P. 56(f)).

IMS styled motion as a "motion to dismiss and or summary judgment." (ECF No. 20, at 1). MSCG styled its motion solely as a motion to dismiss, but requests in a footnote that that the motion alternatively be treated as one for summary judgment if necessary to consider the attached documents. (ECF No. 32-2, at 4). Plaintiff had notice by virtue of the title of IMS's motion and MSCG's footnote. Although a footnote might not always be sufficient, Plaintiff's opposition to MSCG's motion acknowledged MSCG's request for summary judgment in the alternative (ECF No. 33, at 16), discussed the standard of review for summary judgment in its legal standards section (*Id.* at 5-6), and included its own attachments of extrinsic evidence (ECF No. 33-2). It is thus appropriate to consider the extraneous materials submitted by all three parties under the summary judgment standard.

A motion for summary judgment will be granted only if there exists no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 249. In

14

undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in the light most favorable to the party opposing the motion," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also EEOC v. Navy Fed. Credit Union*, 424 F.3d 397, 405 (4th Cir. 2005), but a "party cannot create a genuine dispute of material fact through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375 (D.Md. 2001) (citation omitted).

To prevail on a motion for summary judgment, the moving party generally bears the burden of showing that there is no genuine dispute as to any material fact.[5] No genuine dispute of material fact exists, however, if the nonmoving party fails to make a sufficient showing on an essential element of his case as to which he or she would have the burden of proof. *Celotex*, 477 U.S. at 322–23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his responsibility to confront the summary judgment motion with an "affidavit or other evidentiary showing" demonstrating that

---

[5] The parties have not addressed whether Plaintiff generally bears the burden of proving exhaustion before moving forward with a claim under the Ordinance or whether Defendants must plead and prove a failure to exhaust as an affirmative defense. Even if Defendants bear the burden of proof, however, they have produced evidence sufficient to meet the burden, as discussed below.

there is a genuine issue for trial. *See Ross v. Early*, 899 F.Supp.2d 415, 420 (D.Md. 2012), *aff'd*, 746 F.3d 546 (4th Cir. 2014).

### B.   Failure to Exhaust

Defendants challenge Plaintiff's claims under the Ordinance as being barred for failure to exhaust her administrative remedies under the Ordinance. (ECF Nos. 22, at 3; 32-2, at 14-15).   In her opposition to the motions, she contends that, by alleging that the discrimination charge was filed with the EEOC, Plaintiff also alleged that her complaint was filed with the PGHRC.   (ECF Nos. 29, at 14; 33, at 16).   Under federal regulations, where an "approved local authority" has subject matter jurisdiction over the same discrimination charge, the EEOC will cross-file the charge with the local agency. *See* 29 C.F.R. § 1601.13.   The PGHRC is an approved local authority.   29 C.F.R. § 1601.74.

Defendants point out, however, that Plaintiff's EEOC complaint explicitly names the local authorities with which it would be cross-filed and does not include the PGHRC.   The charge filings against both IMS and MSCG state that the charge will be cross-filed with the Maryland State Commission on Human Rights and the Prince William County, Virginia Human Rights Commission. (ECF No. 32-12, at 3, 12).   Both of these agencies are also approved local authorities under the federal regulations, 29

16

C.F.R. § 1601.74, and the EEOC regulations are clear that the EEOC may not send the filing to every applicable local authority.  29 C.F.R. § 1601.70(d) ("Where both State and local [] agencies exist, the [EEOC] reserves the right to defer to the State [authority] only."); *id.* ("[W]here there exist agencies of concurrent jurisdiction, the [EEOC] may defer to the [] agency which would best serve the purposes of title VII."); *see also* 29 C.F.R. § 1601.74 n.2 ("It is advisable for individuals to contact the [local] agency to confirm coverage.").  This court has also previously held that these warnings "would seem to indicate to any reasonable person exercising due diligence that a referral to the PG[]HRC . . . would not be automatic after a claim had already been filed with the Maryland Human Relations Commission." *Rachel-Smith v. FTData, Inc.*, 247 F.Supp.2d 734, 744 (D.Md. 2003).  The court in *Rachel-Smith* granted summary judgment in favor of the employer for the PGHRC claims where the plaintiff similarly failed to exhaust based on an assumption that the EEOC filing would trigger cross-filing with the PGHRC. *Id.*  Although that case involved a more circuitous path to the PGHRC – Plaintiff expected the State authority to send it to the EEOC and then the EEOC, knowing the state authority already had the filing, to send it to the PGHRC – its logic applies here as well.  Plaintiff signed her EEOC charge filings that named only the local authorities for the State of Maryland and the county

17

where Woodbridge, Virginia is located.  In light of the specific naming of the other local authorities and the absence of the PGHRC on the face her EEOC charge filing, Plaintiff's contention is insufficient to create a dispute over whether a charge was filed with the PGHRC.  Therefore, Defendants' motions for summary judgment will be granted with regard to these claims.

## IV.  Conclusion

For the foregoing reasons, the motions to dismiss or for summary judgment filed by Defendants IMS and MSCG will be granted.  A separate order will follow.

/s/
DEBORAH K. CHASANOW
United States District Judge